UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAIME B., | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   2:19-cv-00563-NT |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the April 3, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of depression, anxiety and fibromyalgia. (R. 23.) The ALJ also determined that Plaintiff's inflammatory arthritis was non-severe. (R. 23-24.) The ALJ further found that as the result of the impairments, Plaintiff has the physical residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, frequently climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, and occasionally climb ladders, ropes, and scaffolds; and that Plaintiff has the mental RFC to understand and carry out instructions consistent with simple routine tasks and perform simple routine tasks and concentrate on those tasks for two-hour increments over an eight-hour workday, throughout a 40-hour workweek, and to relate to coworkers and supervisors but have only occasional contact with the public.

Given the RFC findings and the testimony of a vocational expert, the ALJ determined that Plaintiff is unable to perform any past relevant work, but that consideration of Plaintiff's RFC along with her age, education, and work experience supports the conclusion that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform, including the jobs of electrical accessories assembler, office helper and assembler II. (R. 35.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record

contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ and that the Appeals Council erred when it denied Plaintiff's request for review.

**A. RFC**

Plaintiff argues that because she was diagnosed with fibromyalgia after the state agency experts provided their administrative findings, the ALJ could not reasonably rely on the agency experts and thus impermissibly interpreted raw medical evidence when he formulated Plaintiff's RFC.

While an ALJ is not required to call a medical expert, *see Hallock v. Astrue*, No. 2:10-cv-00374-DBH, 2011 WL 4458978, at *2 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Feb. 28, 2010), an ALJ may not substitute her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. An ALJ, however, "is perfectly competent to resolve conflicts in

3

expert opinion evidence regarding RFC by … judging whether later submitted evidence is material ….." *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6, n.5 (D. Me. Jan. 17, 2011). In other words, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." *Rodriguez*, 647 F.2d at 222.

Here, the ALJ found the opinions of the state agency medical consultants were "partially persuasive" to the extent the consultants' assessments of postural limitations and abilities were consistent with the RFC.[2] (R. 32.) The state agency experts' opinions, as noted, were issued before Plaintiff was diagnosed with fibromyalgia. (*Id*.) The ALJ found Plaintiff more limited than the agency experts found her to be and assesses a limitation to light work after "considering the record as a whole, the later diagnosis of fibromyalgia, and … giving some credit to [Plaintiff's] testimony concerning ongoing pain …." (*Id*.)

Fibromyalgia, the First Circuit has observed,

> is defined as a syndrome of chronic pain of musculoskeletal origin, but uncertain cause. Further, the musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities. The American College of Rheumatology nonetheless has established criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified areas.

---

[2] For claims filed on or after March 27, 2017, such as Plaintiff's, the regulations that govern the ALJ's evaluation of opinion evidence provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R § 404.1520c(a). Moreover, while an ALJ must consider the listed factors – supportability, consistency, relationship with the claimant, specialization, and other factors – "as appropriate[,]" *id*., § 404.1520c(a) & (c), the ALJ need only explain his or her consideration of the two "most important factors[,]" supportability and consistency, and "may, but [is] not required to, explain how [he or she] considered" the remaining three factors. *Id*., § 404.1520c(b)(2); *see also Ryan M. St. P. v. Saul*, No. 2:19-cv-00169-NT, 2020 WL 1672785, *2 (D. Me. April 6, 2020).

*Johnson v. Astrue*, 338 Fed. Appx. 3, 4 (1st Cir. 2009) (citations omitted). Consistent with the First Circuit's observation, this Court has noted that fibromyalgia is "a condition that normally results in significant pain." *Breingan*, 2011 WL 148813, at *7. "[S]ymptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder." *Avery v. Sec'y of HHS*, 797 F.2d 19, 23 (1st Cir. 1986). Where pain is an issue, an ALJ must consider "a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain …." *Id*.

      Plaintiff was formally diagnosed with fibromyalgia in August 2018, after the state agency experts offered their opinions. (R. 100, 571.) Generally, "a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted [that] call[s] the expert's conclusions into question." *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). An ALJ may, however, rely on experts' reports despite later-submitted evidence when the new evidence "does not call into question their conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020). Where the unseen portions of the record "are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the ALJ," there is no material change in the record evidence that would call a consultant's conclusions into question. *Id*. (citing *Robert L. v. Berryhill*, No. 1:17-cv-00348-JDL, 2018 WL 3599966, at *6 (D. Me. July 27, 2018)).

Plaintiff argues that the state agency experts could not accurately assess her functional limitations because they were unaware of the etiology of her symptoms. The record reflects that the agency consultants were aware of the symptoms generated by Plaintiff's fibromyalgia—including joint pain, tenderness and chronic fatigue—and considered them in rendering their opinions. (R. 78-79, 82, 95, 98.)  In his report, agency expert Donald Trumbull, M.D., included some of this evidence under the heading "LUPUS/FIBROMYALGIA." (R. 78.) Dr. Trumbull also reviewed the consultative examination performed by Ira Stockwell, D.O., who documented Plaintiff's reports of fatigue, joint pain, poor endurance, possible edema, and significant psychological issues. (R. 75, 487.)  Likewise, agency consultant Archibald Green, D.O., noted evidence of Plaintiff's chronic pain, swelling in her joints, and difficulty in lifting and walking; he also observed that while the etiology of such symptoms had not yet been clearly defined, seronegative rheumatoid arthritis was possible.  (R. 95, 100.)

The ALJ explained that he relied in part on the agency consultants' findings as well as other evidence, including Plaintiff's fibromyalgia diagnosis and related symptoms, to assess the Plaintiff's RFC. (R. 27-31.) Insofar as the reported symptoms of fibromyalgia, "'musculoskeletal pain, stiffness, and fatigue,'" *Green-Younger*, 335 F.3d at 109, were reflected in Plaintiff's medical records before the formal diagnosis, the formal diagnosis is "consistent with the preexisting record," and the ALJ was not precluded from relying on the consultants' opinions. *See Emily A.*, 2020 WL 2488576, at *7.

Given the evidence of fibromyalgia-type symptoms prior to the diagnosis, which symptoms were considered by the agency consultants, the ALJ supportably relied on the

6

consultants' opinions and did not impermissibly interpret raw medical data. The agency opinions and other evidence of record cited by the ALJ constitute substantial evidence to support the ALJ's RFC assessment.[3]

## B. Appeals Council

Plaintiff also argues that remand is required because the Appeals Council erred when it denied Plaintiff's request for review of the ALJ's decision. Plaintiff submitted additional medical records and a medical opinion form to the Appeals Council from Plaintiff's treating rheumatologist, Amanda Scott, M.D. (R. 13-17, 267-68.) The Appeals Council determined that there was not a "reasonable probability that the additional evidence would change the outcome of the ALJ's decision." (R. 2.)

"The First Circuit has emphasized that the Appeals Council's reasons for denying review are owed 'great deference[,]' although 'they are ordinarily not beyond review in extreme cases.'" *Alley v. Astrue*, No. 1:09-CV-636–JAW, 2010 WL 4386516, at *3 (D. Me. Oct. 28, 2010) (quoting *Mills v. Apfel*, 244 F.3d 1, 6 (1st Cir. 2001)). The First Circuit has also noted that while the Appeals Council "is free to consider new material evidence

---

[3] The ALJ also considered Plaintiff's testimony that due to her pain and psychological conditions, she had a limited range of daily activities. (R. 55-56, 60.) The ALJ formulated an RFC restricting Plaintiff to light work, in contrast to the agency consultants' opinions, which would have permitted medium level work. To the extent the ALJ's RFC gave Plaintiff the benefit of the doubt as to her report regarding her limitations and included restrictions more favorable to Plaintiff than the experts based in part on Plaintiff's testimony, the ALJ's RFC finding was not error. *Kristina D.B. v. Berryhill*, No. 18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019); *see also Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018) (ALJ can give the claimant the "benefit of the doubt" and recognized limitations in the RFC finding beyond those expressed in an opinion that the ALJ might otherwise rely on as substantial evidence of a less restrictive RFC); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("A claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.")

regardless of whether there was good cause for not producing it earlier; the court is not free to order a remand absent such good cause." *Mills*, 244 F.3d at 5–6. There are thus two circumstances that would support a remand order: "(i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an 'egregiously mistaken ground' for its action in refusing review in the face of such late-tendered evidence." *Alley*, 2010 WL 4386516, at *3 (quoting *Mills*, 244 F.3d at 5-6) (emphasis in original). The First Circuit has cautioned that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process does not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987).

     Here, Plaintiff contends that Dr. Scott's form report is new and material evidence as it did not exist at the time the ALJ issued his decision. The fact that evidence did not exist at the time of the hearing before the ALJ, without more, does not constitute good cause. *Connolly v. Colvin*, No. 2:14-cv-292-JHR, 2015 WL 1859011, at *1 (D. Me. Apr. 22, 2015) (citing *Lyons v. Barnhart*, No. 1:03-CV-47-JAW, 2004 WL 202837, at *4 (D. Me. Jan. 30, 2004) (not sufficient to argue that the evidence did not exist at the time of the hearing; "otherwise, nearly all late-submitted evidence would be cognizable"). While Dr. Scott signed the report on May 14, 2019, more than a month after the ALJ's decision, the record reflects that Plaintiff had a visit with Dr. Scott in February 2019. Plaintiff offers no explanation as to why the results of the consultation could not have been and were not

provided before the ALJ issued his decision. Plaintiff, therefore, arguably has not satisfied the good cause requirement.

Regardless of whether Plaintiff has demonstrated good cause, however, Plaintiff has failed to establish that "the Appeals Council was egregiously mistaken in its threshold determination that the new evidence did not present a reasonable probability of changing the ALJ's decision." *Wilson v. Colvin*, No. 2:13–cv–197–JDL, 2014 WL 4715406, at *1 (D. Me. Sept. 22, 2014). Dr. Scott's form report noted symptoms experienced by Plaintiff that were included in the record before the ALJ—tender points, chronic fatigue, subjective swelling, anxiety, depression, stiffness, joint pain, breathlessness, nonrestorative sleep, and headaches – and considered by the agency experts. Given that the ALJ acknowledged and considered Plaintiff's fibromyalgia diagnosis and related symptoms, given that the agency consultants reviewed the medical records that included the same or similar symptoms as reflected in Dr. Scott's report, and given that upon assessment of Plaintiff's overall capabilities the ALJ concluded that Plaintiff had the ability to perform light work, the Appeals Council was not egregiously mistaken when it determined that submitted evidence did "not show a reasonable probability that it would change the outcome of the decision." (R. 2.)

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of November, 2020.